Jamil L. White (Bar No. 244028)
Matthew Mellen (Bar No. 233350)
LOUIS | WHITE & ASSOCIATES
6049 Douglas Blvd, Suite 2
Granite Bay, CA 95746
Telephone:  (877) 992-5291
Facsimile:  (916)779-4177

Attorneys for Plaintiff,
WILLIAM ALLEN SMITH

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

WILLIAM ALLEN SMITH, an individual,

        Plaintiff,

    v.

NATIONAL CITY MORTGAGE, a business
entity, UNITED LENDERS GROUP, a business
entity, JEFF MOORE, an individual,
KONDAUR CAPITAL CORP., a business entity
and Does 1 through 100, inclusive,

        Defendants.

Case No.: 2:10-cv-00359-JAM-JFM

**PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FIRST
AMENDED COMPLAINT FILED BY
DEFENDANT PNC, NATIONAL
ASSOCIATION, AS SUCCESSOR BY
MERGER TO NATIONAL CITY
BANK, PREVIOUSLY DOING
BUSINESS AS "NATIONAL CITY
MORTGAGE"**

Date:    October 6, 2010
Time:    9:30 a.m.
Ctrm:    6, 14th Floor
Judge:  Hon. John A. Mendez

     Plaintiff WILLIAM ALLEN SMITH (hereinafter "Plaintiff") respectfully submits the

following Memorandum of Points and Authorities in Opposition to Motion to Dismiss First Amended

Complaint ("MTD") filed by Defendant PNC, NATIONAL ASSOCIATION, AS SUCCESSOR BY

MERGER TO NATIONAL CITY BANK, PREVIOUSLY DOING BUSINESS AS "NATIONAL

CITY MORTGAGE" (hereinafter "PNC").

//

//

//

# TABLE OF CONTENTS

I. **INTRODUCTION**................................................................................5

II. **FACTUAL BACKGROUND** ...........................................................5

III. **DISCUSSION** ....................................................................................7

    A. **Legal Standard** ...........................................................................7

       1. **Dismissal Is Inappropriate Under Rule 12(b)(6)**...............7

    B. **Specific Causes of Action** ........................................................9

       1. **First Cause of Action for Fraud is Sufficient to State a Claim Against PNC.** ....................................................9

       2. **Third Cause of Action for Breach of Fiduciary Duty is Sufficient to State a Claim Against Defendant PNC.** ...........................................................13

       3. **Second and Fourth Causes of Action for Declaratory Relief are Sufficient to State a Claim Against Defendant PNC.**....................................14

       4. **Fifth Cause of Action for Accounting is Sufficient to State a Claim Against Defendant PNC.**....................................17

       5. **Eighth Cause of Action for Negligence.** ..........................18

       6. **Ninth Cause of Action for Violation of Business and Professions Code Section 17200 is Sufficient to State a Claim Against Defendant PNC.**...........18

III. **CONCLUSION**.................................................................................19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## CASES

Adams v. SCME Mortgage Bankers, Inc., 2009 U.S. Dist. LEXIS 46600, *13 16
    (E.D. Cal. May 22, 2009) ...................................................................11

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)...........................................6

Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990)....................................6

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007) ...........................6, 7

Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977) ...............11

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)...........................................7

Conley v. Gibson, 355 U.S. 41, 47 (1957).....................................................6

Cruz v. Beto, 405 U.S. 319, 322 (1972).......................................................6

Davis v. Scherer, 468 U.S. 183 (1984) .......................................................6

Gottreich v. SF Inv. Corp., 552 F.2d 866 (9th Cir. 1977) ...................................10

Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir. 1987)........................................8

Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F. 2d 1542, 1555 n. 19 (9th
    Cir. 1990) ................................................................................7

In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal.
    1976) ...................................................................................11

Lazy Y. Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)............................6

Hanna v. Plumer, 380 U.S. 460, 465 (1965) ..................................................11

Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122, (9th Cir. 2009) ....................17

Homestead Savings v. Darmiento, 230 Cal.App.3d 424 (1991) .................................14

Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002) ...........................................17

Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634 (2009) .....................................13

Moeller v. Lien, 25 Cal.App.4th 822, 834 (1994) ........................................14, 15

Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993).................................10

Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996).......................16

Ricord v. Aragon, 115 Cal. App. 2d 176 (1952) .............................................13

Sandler v. Casale, 125 Cal. App. 3d 707 (1981) ...........................................13

3

*Saxon Mortgage Services v. Hillery*, 2008 U.S. Dist. LEXIS 100056, *15, *16
 (N.D. Cal. 2008) ...............................................................................................14

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) .................................................6

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000)........................16

*Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299 (1997) .......................13

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994) ....................10

*Unterberger v. Red Bull North America, Inc.*, 162 Cal. App. 4th 414 (2008) ...............................6

*Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973)........................7

*Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 782 (1979) ...........................12

*Wyler Summit Partnership v. Turner Broadcasting Inc.*, 135 F. 3d 658, 661 (9th
 Cir. 1998) ..........................................................................................................7

**STATUTES**

15 U.S.C. § 1635(f) ...........................................................................................13

Cal. Bus. & Prof. Code § 17200 ........................................................................17

California Civil Code § 2924 ....................................................................14, 15

Cal. Code Civ. Proc. § 337.................................................................................15

Cal. Code Civ. Proc. § 1060...............................................................................13

Cal. Com. Code § 3301, et seq. .........................................................................15

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ......................................................6, 7

**OTHER**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1204
 (2008)................................................................................................................11

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff in this action is a victim of a predatory lending scheme whereby he was fraudulently induced to enter into a usurious loan with bait and switch tactics, and was denied the ability to rescind the loan after being promised in writing that he had the right to do so.  As a result of the named Defendants' conduct, Plaintiff has suffered the loss of his home and other damages.  In its Motion to Dismiss, Defendant PNC attempts to skirt the issues by claiming that Plaintiff's FAC is ambiguous and uncertain.  However, Plaintiff sufficiently stated his causes of action against PNC.

Accordingly, Plaintiff respectfully requests, for the following reasons, that Defendant PNC's Motion to Dismiss be denied in its entirety or, in the alternative, that Plaintiff be given leave to amend his First Amended Complaint.

### II.  FACTUAL BACKGROUND

In October of 2006 Plaintiff sought a construction loan to finance the construction of a home located at 5 Stonefield Court, Sacramento, California (hereinafter "Property") (FAC ¶ 2.) One week after being denied a loan from Defendant PNC, Plaintiff was contacted by an independent broker, Defendant MOORE, who stated he had been directed by PNC to broker Plaintiff's loan through Defendant UNITED.

Defendant MOORE advised Plaintiff that he could get him the "best deal" and the "best interest rates" available on the market.  (FAC ¶ 50.)  On or about January 31, 2007, PNC approved Plaintiff for a construction loan at a 30-year fixed rate of 7.825% to borrow a principal sum of $880,000.00 with a monthly mortgage payment of $6,350.10 per month.   (FAC ¶ 57.) Based upon PNC's verbal authorization, Plaintiff allowed construction of his home to proceed. (FAC ¶ 58.)

To qualify Plaintiff, Defendants UNITED and MOORE overstated Plaintiff's income on the loan application without Plaintiff's knowledge or consent.  Plaintiff later discovered that Defendant MOORE stated his income as $33,000.00 per month.  In fact, Plaintiff accurately

stated his actual income on his initial Uniform Residential Loan Application ("Form 1003") as $23,000.00 per month.  Moreover, PNC had already been given Plaintiff's correct income in his initial loan application, and was aware that MOORE had inflated Plaintiff's income in order to qualify him for the loan.  (FAC ¶ 84-85.)

On February 9, 2007, Plaintiff discovered at closing that the loan terms that he was presented with were much worse than he had been promised.  The loan that was presented to Plaintiff was an adjustable rate loan, not a fixed, and included a ten year interest only provision and required twice the down payment.  (FAC ¶ 60.)   Plaintiff felt pressured to sign the loan documents under duress since he had already authorized construction to begin on his house.  Although he would not have signed due to the material changes in the terms, Plaintiff's loan documents included a right to cancel notification citing the Truth in Lending Act (TILA).  (FAC ¶ 61.)  Plaintiff was reassured by the escrow agent that the TILA notice gave him the right to cancel the loan within three days of signing.   Based on the promise that he could rescind the loan, Plaintiff agreed to sign the loan documents. (FAC ¶ 62-63.)

Within the three day cancellation period, Plaintiff exercised and delivered the loan cancellation to the lender and title company on the same day.  (FAC ¶ 64.)  Plaintiff was subsequently notified by representatives of the title company, PNC, and MOORE that the construction loan could not be cancelled.  (FAC ¶ 65-67.)

In or around June 2008, Plaintiff sought a forbearance settlement and contacted PNC regarding his options.  Plaintiff was advised by a PNC representative that Plaintiff would be eligible for a permanent modification of his loan after a three month trial payment period, and if Plaintiff reduced his unsecured debt.  (FAC ¶ 72.)  On or about July 3, 2008, PNC sent a "forbearance agreement" to Plaintiff requesting payments of $2,895.00 respectively, for Plaintiff's July, August and September mortgage payments.  PNC told Plaintiff that after he made the three payments, the final loan modification would reflect a payment of approximately $2,895.00.   (FAC ¶ 73.)  At PNC's direction, Plaintiff filed Chapter 7 bankruptcy on July 30, 2008 in order to reduce his unsecured debt.  (FAC ¶ 74.)  On December 15, 2008, Plaintiff

contacted PNC and was advised by a PNC customer representative that PNC had approved the loan modification and that the modification paperwork was forthcoming.   (FAC ¶ 75.)

While waiting for the loan modification confirmation, Plaintiff was notified by PNC that Plaintiff's loan had been sold to Defendant KONDAUR who would now be finalizing the loan modification.  (FAC ¶ 77.)  On February 12, 2009, Plaintiff was assured by a KONDAUR representative that the modification began by PNC would continue to be processed.  (FAC ¶ 79.)  On the same day, KONDAUR issued a Notice of Default to Plaintiff.  (FAC ¶ 80.)

Plaintiff believes that discovery will show that the named Defendants, PNC included, fraudulently conspired together to induce Plaintiff into a usurious loan purely for their financial gain.  Although Plaintiff was aware of the contract terms when he entered into the loan agreement with Defendant PNC, Plaintiff's right to cancel was improperly reneged by PNC.

## III. DISCUSSION

### A. Legal Standard

#### 1. Dismissal Is Inappropriate Under Rule 12(b)(6).

On a motion to dismiss, the Court should accept all the allegations as true, draw all reasonable inferences in favor of the plaintiff, and resolve all doubts in the pleader's favor. (Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972); Lazy Y. Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).)  To survive a motion to dismiss a plaintiff need to plead "only facts to state a claim for relief that is plausible on its face."  (Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007).)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  (Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).)  A dismissal is only appropriate where the plaintiff fails to state a claim supportable by any cognizable legal theory.  (Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990).)  A complaint must "only give the defendant fair notice of what plaintiff's claim and the grounds of which it rests."  (Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Bell Atlantic Corporation v. Twombly, 550 U.S. at 563.)  Any existing ambiguities must be resolved in favor

1   of the pleading.  (<u>Walling v. Beverly Enters.</u>, 476 F.2d 393, 396 (9th Cir. 1973).)

2        In deciding a motion to dismiss, the court must accept as true the allegations of the

3   complaint and must construe those allegations in a light most favorable to the non-moving party.

4   (<u>Wyler Summit Partnership v. Turner Broadcasting Inc.</u>, 135 F. 3d 658, 661 (9th Cir. 1998).)

5   Generally, a court may not consider any material beyond the pleading in ruling on a 12(b)(6)

6   motion.  (<u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F. 2d 1542, 1555 n. 19 (9th Cir.

7   1990).)  However, where it is inclined to grant a motion to dismiss, a district court should provide

8   leave to amend unless it is clear that a complaint could not be saved by any amendment.  (<u>Chang</u>

9   <u>v. Chen</u>, 80 F.3d 1293, 1296 (9th Cir. 1996).)

10        In this case, Plaintiff pled more than sufficient facts to allege the nature and extent of the

11   wrongful conduct committed by Defendant PNC in Plaintiff's FAC.  These factual allegations are

12   thereafter incorporated by reference into each applicable Cause of Action.  Each Cause of Action

13   identifies the elements of that particular Cause of Action and specifies which Defendant or

14   Defendants that Cause of Action applies to.

15        At this point in the litigation, the Court must consider the allegation in Plaintiff's FAC as

16   true, without requiring Plaintiff to prove his case.  The federal notice pleading requires Plaintiff

17   only to allege enough facts to place the named Defendants, Defendant PNC included, on notice of

18   the cause of action, general facts, elements and damages claimed against them.  In accordance

19   with the holding in <u>Bell Atlantic</u>, proof of the specific and detailed wrongdoing, of which each of

20   the Defendants are most culpable and responsible for, is reserved for the later stage of the

21   litigation due to the simple reason that such proof can only be obtained through discovery.  Here,

22   the individual Causes of Action have been sufficiently pled to place Defendant PNC on notice

23   and to allow it to research and defend the allegations against it.  Plaintiff stated the factual basis

24   of and the requisite elements of each and every Cause of Action.  As such, Plaintiff sufficiently

25   pled all of the necessary facts and elements to state a claim against Defendant PNC.

26        Moreover, Plaintiff alleged that Defendants together, in a "conspiratorial nature,"

27   undertook the misdeeds herein.  (FAC ¶ 24.)  Defendants named herein are indeed liable to the

28   extent that they acted as agents, servants and/or employees of the remaining defendants and for

each other.  (FAC ¶ 24.)  The Ninth Circuit held that averments of agency are not required in a complaint.  (See, Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir. 1987) (holding that "[a] person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact").)  As such, the "civil conspiracy" as alleged and incorporated into all subsequent Causes of Action sufficiently provides the threshold legal and factual basis for several causes of action that at first blush may seem inappropriate for a particular Defendant.  In sum, all who participated in this "get rich quick" scheme, cannot now claim that they are somehow an innocent, unrelated third party.

**B.  Specific Causes of Action**

**1.  First Cause of Action for Fraud is Sufficient to State a Claim Against PNC.**

To plead a cause of action for fraud, the following elements must be established: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  (Unterberger v. Red Bull North America, Inc., 162 Cal. App. 4th 414 (2008).)

In this case, Plaintiff identified specific facts and circumstances that constitute fraud. Plaintiff alleged multiple misrepresentations made by PNC.  First, PNC aided and abetted MOORE and UNITED in their representation to Plaintiff that he was approved for a fixed rate loan at a 30 year rate of 7.825% when in fact he was given an adjustable rate loan with materially different terms.  (FAC ¶¶ 57, 112.)  PNC trained and incentivized MOORE and UNITED to make the false statement to Plaintiff and paid MOORE and UNITED commissions based on their ability to make the false statement and induce Plaintiff into the loan agreement.  (FAC ¶ 114.) Second, PNC made its own independent false statement when its representative told Plaintiff that he was unable to rescind the loan after he was given a written agreement stating he had the right to do so.  (FAC ¶ 115.)   Finally, because Plaintiff was unable to rescind his loan, PNC representative, Michael Scheck advised Plaintiff that he would qualify for a loan modification if he made three initial payments and reduced his unsecured debt in bankruptcy.  (FAC ¶ 116.) Plaintiff agreed to meet the terms requested by PNC and was advised by a PNC representative, Jerry Johnson, that his loan modification had been approved.  (FAC ¶ 116.)  However, before the loan modification was finalized, PNC sold Plaintiff's loan to Defendant KONDAUR. Despite

9

being advised by KONDAUR that it would honor the modification PNC began for Plaintiff, KONDAUR instead issued a Notice of Default on February 12, 2009.  (FAC ¶ 80.)

Defendant PNC was aware of its misrepresentations when it colluded with other named Defendants and encouraged MOORE and UNITED to bait and switch.  Further, PNC never intended to allow Plaintiff to rescind his loan, despite giving him a written agreement to do so. PNC also advised Plaintiff of the option to obtain a loan modification even though it never intended to follow through with its promises.

PNC intended to defraud Plaintiff by providing Plaintiff with a loan that had usurious terms contrary to what he was promised, and by denying Plaintiff's right to rescind the loan after providing the option to him in writing.  (FAC ¶ 68, 113.)  PNC also intended to defraud Plaintiff by promising him a loan modification, but then sold Plaintiff's loan to KONDAUR.  Plaintiff alleged that neither PNC nor KONDAUR intended to approve the loan modification.  (FAC ¶ 72-76.)

Plaintiff justifiably relied on PNC's representations.  First, with regards to signing the loan documents, Plaintiff was given a written agreement stating that he had the right to cancel within three days.  Plaintiff verified his right to cancel before signing the documents, and was assured that he could rescind within three days.  (FAC ¶ 61-62.)  After Plaintiff signed the loan documents and attempted to rescind the loan, he was denied rescission.  (FAC ¶ 64-68.) Additionally, Plaintiff paid his mortgage payments in reliance on PNC's promises that Plaintiff could receive a loan modification.  (FAC ¶ 69.)  Thus, Plaintiff detrimentally relied on PNC's promise to rectify the loan terms in lieu of taking legal action.  (FAC ¶ 117.)

Plaintiff alleged that he incurred actual damages as a direct result of PNC's fraudulent conduct.  Plaintiff was told he would have three days to rescind the loan pursuant to the written agreement he was given at closing.  His right to rescind was later denied even though he timely exercised his right to rescind within the terms of the agreement.   If Plaintiff had known that he would not be able to rescind the loan, he would not have signed the loan documents.  (FAC ¶ 61.) As a result, Plaintiff alleged actual damages including, but not limited to, loss of money and property including but not limited to losses through overcharges and unlawfully unfavorable loan

terms, incurred attorney's fees and costs to save his home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial.  (FAC ¶ 134.)

Defendant PNC seems to imply that Plaintiff failed to plead his fraud claim with requisite specificity.  (MTD, 5: 15-18.)

To meet the requisite level of specificity, Rule 9(b) only requires identification of circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent activities, such that a defendant can prepare an adequate answer to allegations.  (Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).)  A pleading is sufficient under Rule 9(b) if it identifies circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.  (Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993), quoting Gottreich v. SF Inv. Corp., 552 F.2d 866 (9th Cir. 1977).)

However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary matter.  (Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).)  Further, Rule 9(b) may be relaxed with respect to matters within opposing party's knowledge.  (Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).)  In particular, "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case.  If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief."  (Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067-68 (5th Cir. 1994).)

Defendant PNC also argues that Plaintiff failed to allege the specific names of the persons who made the misrepresentation, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written.  (MTD, 4: 1-4.)  To the contrary, Plaintiff specifically stated that he spoke with a manager at PNC named Sharon Bates who stated that even though PNC had received the cancellation notice, because the loan was a construction loan, it could not be canceled because it would be against the law to do so.  (FAC ¶ 66.)  Plaintiff also alleged that in or around June of 2008 he spoke with Michael Sheck, a representative of PNC, who advised Plaintiff that the loan modification would be considered permanent if Plaintiff

reduced his unsecured debt.  (FAC ¶ 72.)  Further, paragraph 75 of Plaintiff's FAC clearly states that on December 15, 2008 Plaintiff again spoke with a PNC representative, Jerry Johnson, who indicated that PNC had approved Plaintiff's loan modification and that the paperwork was forthcoming.  (FAC ¶ 75.)

Notwithstanding Plaintiff's allegations, Defendant PNC cites to California state law to support its contention that Plaintiff failed to allege requisite facts to assert a fraud action against a corporation.  (MTD, 4:1-4.)  Wrong law.  PNC failed to recognize that this controversy is before a federal court which applies federal procedural law.  "[T]he rules regarding the standard of specificity to be applied to federal pleadings...are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."  (5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1204 (2008) (collecting cases); see, e.g., Hanna v. Plumer, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law.").)  Consequently, California pleading requirements are irrelevant to the integrity of Plaintiffs' claim in federal court, and are inapplicable in this case to the extent they impose a pleading standard inconsistent with Rule 9(b).  (See, Adams v. SCME Mortgage Bankers, Inc., 2009 U.S. Dist. LEXIS 46600, *13 16 (E.D. Cal. May 22, 2009).)

Under Rule 9(b) it is also not necessary once the Complaint adequately identifies a particular defendant within a category of defendants allegedly responsible for some continuing course of conduct, to plead more than group conduct of defendants.  (In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal. 1976).)  Moreover, in cases where fraud was conducted over several years, a plaintiff is not required to allege each date of each defendant's fraudulent conduct since such requirement would defeat the purpose of Rule 8 requiring the pleading be in short, plain, concise statements.  (Id.)

Plaintiff specifically alleged agency relationship between PNC and MOORE and UNITED. (FAC ¶24.)  Plaintiff alleged PNC directed and guided UNITED and MOORE to tamper with the loan application and to employ deceptive means where necessary so that the transaction could be rubber-stamped by PNC.  (FAC ¶30-31.)  Additionally, MOORE stated he was directed by PNC to broker Plaintiff's loan through UNITED. (FAC ¶48.)

Defendant PNC also erroneously argues that Plaintiff was not induced to sign loan documents because he was aware of the terms and a reasonable person would not have signed if terms were materially different than what he expected. (MTD, 6:1-5.)  However, Plaintiff was under duress to sign the documents because he had already authorized construction.  Additionally, Plaintiff was provided with a written rescission agreement.  Plaintiff confirmed with the escrow agent that he could rescind, and was assured that he had the right to cancel.  (FAC ¶61-62.) Plaintiff attempted thereafter to rescind the loan, but was told by PNC representatives that he was unable to rescind because it was a construction loan.  (FAC ¶65-68.)

**2.   Third Cause of Action for Breach of Fiduciary Duty is Sufficient to State a Claim Against Defendant PNC.**

Defendant PNC incorrectly argues that it did not owe Plaintiff a fiduciary duty because lenders do not owe a fiduciary duty to borrowers.  (MTD, 7:3-6.)

Under general principles of agency and statutory real estate law, a fiduciary relationship exists between a real estate loan broker and the borrower.  (See e.g., Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 782 (1979) (broker's failure to orally disclose actual interest rate, late payment penalty, and correct amount of balloon payment was breach of fiduciary duty.)  Since PNC referred MOORE to Plaintiff, the fiduciary relationship that existed between MOORE and Plaintiff extended to PNC through agency principles.  (FAC ¶ 53.)

Plaintiff specifically alleged an agency relationship between PNC and the other named Defendants.  (FAC ¶ 24.)  Although MOORE represented himself as an independent broker, Plaintiff alleged that PNC trained, incentivized, and encouraged UNITED to fraudulently induce prospective borrowers into executing loan agreements with unfavorable terms.  (FAC ¶ 27.) Plaintiff also alleged that PNC directed and guided UNITED and MOORE to tamper with the loan application and to employ deceptive means where necessary so that the transaction could be rubber-stamped by PNC.  (FAC ¶ 30.)  PNC also colluded with the other named Defendants by ignoring traditional underwriting violations so that a promissory note could be executed and secured by a deed of trust on Plaintiff's home.  (FAC ¶ 31.)   Accordingly, the Court should deny Defendant's Motion to Dismiss Plaintiff's claim for Breach of Fiduciary Duty.

### 3. Second and Fourth Causes of Action for Declaratory Relief are Sufficient to State a Claim Against Defendant PNC.

A court may grant declaratory relief with respect to the parties' rights and obligations in a controversy arising under a mortgage, and to determine whether a mortgage was tainted with usury.  (See, Sutherland v. Barclays American/Mortgage Corp., 53 Cal. App. 4th 299 (1997); see also, Ricord v. Aragon, 115 Cal. App. 2d 176 (1952).)  The statute governing the right of action for declaratory relief does not require a breach of contract in order to obtain declaratory relief, only an actual controversy.  (Cal. Code Civ. Proc. § 1060; Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634 (2009).)  If a complaint requesting declaratory relief is challenged for sufficiency, the Court must construe the complaint liberally.  (Sandler v. Casale, 125 Cal. App. 3d 707 (1981).)

a. Second cause of action: declaratory relief for fraud related to the denial of rescission.

Defendant PNC erroneously argues that there is no controversy at issue.  Although Regulation Z excludes residential mortgage transactions, this does not absolve PNC of the duties inherent to its written agreement granting Plaintiff the right to rescind within three days of signing.  PNC's attempt to escape liability under the agreement is evident in its claims that Plaintiff did not timely cancel within the three day period.  Plaintiff's FAC clearly states that Plaintiff signed the cancellation notice within the three day period, and delivered it to both the title company and lender on the same day. (FAC ¶ 64.)

PNC blatantly misconstrues the fact that Plaintiff did not allege a valid and viable tender required for rescission.  In fact, Plaintiff provided viable tender when he attempted to rescind the loan and return the monies back to PNC prior to using any of the funds, but was denied.  (FAC ¶ 64.)

Plaintiff's claims are not time barred.  The statute of limitations under TILA is three years.  (15 U.S.C. § 1635(f).)  Plaintiff was notified that he could not rescind his loan and therefore discovered the violation on February 13, 2007.  (FAC ¶ 65.)  Plaintiff filed his initial complaint in the instant case on February 11, 2010.  Thus, Plaintiff's claim falls within the three year statute of limitations provided by TILA.  Furthermore, even if the Court finds that the loan at issue does not fall within the TILA statute, the written agreement constitutes a binding contract between PNC

14

and Plaintiff.  Thus, Plaintiff's claim falls well within the statute of limitations of four years for breach of written contract.  (Cal. Code Civ. Proc. § 337.)

     b.  Fourth cause of action: declaratory relief for PNC's fraudulent conduct related to Plaintiff's Note.

Defendant PNC alludes that there is no actual controversy related to Plaintiff's fourth cause of action for declaratory relief.  (MTD, 8:18-20.)   Defendant PNC argues that possession of the promissory note is not a prerequisite to initiating the foreclosure sale, and that California Civil Code § 2924 exclusively governs non-judicial foreclosures.  (MTD, 9:8-12.)

The original source for the exclusive language statement in California Civil Code § 2924 is Homestead Savings v. Darmiento, 230 Cal.App.3d 424 (1991).  In Homestead, the court made clear section 2924 created "minimum standards."  The Homestead court explained that:

> Section 2924 et seq. is part of a comprehensive scheme designed to protect debtors from abuse practices that had been associated with powers of sale in deeds of trust.  The Legislature began the 'comprehensive scheme' in 1917 and had continued to establish certain minimum standards for conducting non-judicial foreclosures by placing restrictions on the creditor's exercise of the power of the sale in order to protect the trustor/debtor against forfeiture.

(Id., 230 Cal.App.3d at 433.)

If placing restrictions on creditors' exercise of the power of sale was the intent, it must follow that a 'minimum standard' would require a stranger to the note to prove that it can enforce it.  This requirement was important even before the emergence of the "securitization" of mortgages and of international investment funds.  In 1917, the California legislature may not have foreseen the emergence of international investment funds and a global market for securitized mortgages, but the court held that the statute expressly applies to parties to a contract.  (Moeller v. Lien, 25 Cal.App.4th 822, 834 (1994).)

It would be a nifty trick to convince this Court, and the public at large, that the well established requirement one be a party to an obligation, i.e. a holder of the Note, as expressed in Moeller and section 2924(a), is an "unrelated cure provision."  To the contrary, the statute was designed to prevent fraud.  Ensuring that the named Defendants do not commit fraud is consistent with the statute, and with the holding in Saxon Mortgage Services v. Hillery, 2008 U.S. Dist.

15

LEXIS 100056, *15, *16 (N.D. Cal. 2008), which held that the Note and the mortgage must be together in order to proceed in a non-judicial foreclosure action.

Finally, California Civil Code section 2924 provides that a recital in a deed executed pursuant to section 2924 constitutes prima facie evidence of compliance with the requirements, and conclusive evidence thereof in favor of a bona fide purchaser for value and without notice. (Cal. Civ. Code § 2924(c).)  While it has been held that the prima facie evidence of compliance with the requirements can be rebutted,  Moeller, supra, if a bona fide purchaser takes title of the property for value without notice, the plaintiff would not be allowed to rebut the presumption and the home would be lost.

Here, Plaintiff asserts that the facts alleged in their FAC, taken as true, sufficiently rebut the presumption.  Indeed, where there have been assignments of the Deed, as in this case, one method of rebutting the presumption is to test the efficacy and legality of the purported transfers, and to seek production of the original promissory note to determine whether Defendant PNC, or any of the other named Defendants, have the legal right and authority to engage in the conduct which has given rise to the instant dispute.

In sum, a negotiable instrument can only transfer via negotiation and/or endorsement. (Cal. Com. Code § 3301, et seq.)  Plaintiff alleged that no interest in Plaintiff's Deed, Note, or Property was ever legally transferred to Defendant KONDAUR.  (FAC ¶ 94.)   Further, Plaintiff alleged that Defendant PNC failed to comply with statutory requirements pertaining to the transfer of the Note and the Deed subject to this litigation.  (FAC ¶ 95.)  Thus, any foreclosure proceeding initiated by the named Defendants would be illegal, unless Defendant PNC or any other Defendant named herein, can produce the Note as required by statute.  None of the Defendants named in this case, including PNC, have proffered such proof.

Moreover, a party seeking to secure performance of an obligation, when a breach of the obligation between the parties has occurred, may enforce the security instrument only after complying with the remainder of the statute. (Cal. Civ. Code § 2924.)  However, "the language of the statute is expressly applicable only as between parties to a contract."  (Moeller v. Lien, 25

Cal. App. 4th 822, 834 (1994).)  Since Defendant PNC does not have possession of the Note, it is not a party to the contract with Plaintiff, and cannot enforce the security agreement.

PNC repeatedly attempts to escape liability by stating that it did not initiate the foreclosure and did not participate in the foreclosure process in any way, and instead shifts the blame onto KONDAUR as the issuer of the Notice of Default.  However, Plaintiff alleged PNC's involvement in fraudulently obtaining promissory notes and deeds of trust and "sanitizing" them by selling them to purchasers such as KONDAUR who could later foreclose upon the hapless homeowner who can no longer assert rights normally available to victims of fraud facing foreclosure.  (FAC ¶ 37.)

Again, as above, PNC's argument regarding Plaintiff's ability to tender indebtedness falls short since Plaintiff did indeed tender the full amount of the loan when he attempted to rescind. (FAC ¶ 64.)  Accordingly, the Court should deny Defendant PNC's Motion to Dismiss Plaintiff's Second and Fourth claims for Declaratory Relief.

### 4. Fifth Cause of Action for Accounting is Sufficient to State a Claim Against Defendant PNC.

Defendant PNC again erroneously argues that Plaintiff has not alleged sufficient facts that reflect a fiduciary relationship between PNC and Plaintiff.   (MTD, 10:13.)  As discussed above in Section III(B)(2), Plaintiff specifically alleged an agency relationship between PNC and the other named Defendants.  (FAC ¶ 24.)  Plaintiff also alleged that PNC trained, incentivized, and encouraged UNITED to fraudulently induce prospective borrowers into executing loan agreements with unfavorable terms.  (FAC ¶ 27.)   Plaintiff further alleged that PNC directed and guided UNITED and MOORE to tamper with the loan application and to employ deceptive means where necessary so that the transaction could be rubber-stamped by PNC.  (FAC ¶ 30.) PNC ignored traditional underwriting violations and colluded with the other named Defendants so that a promissory note could be executed and secured by a deed of trust on Plaintiff's home. (FAC ¶ 31.)

PNC also argues Plaintiff failed to allege that the subject loan is so complicated that an ordinary legal action demanding a fixed sum is impractical.  (MTD, 10:16-19.)  However,

Plaintiff's FAC clearly alleges facts showing that an accounting is required.  Plaintiff was offered a right to rescind his loan.  (FAC ¶ 31.)  Plaintiff attempted to rescind the loan, but was denied. (FAC ¶ 31.)  Plaintiff's loan was modified and sold to third party, KONDAUR.  (FAC ¶ 31.)  Due to the sheer number of parties to Plaintiff's note  and various parties contesting the amount Plaintiff owes, an Accounting is appropriate in this instance.  Accordingly, Defendant PNC's Motion to Dismiss Plaintiff's Fifth claim for an Accounting should be denied.

### 5.   Eighth Cause of Action for Negligence.

Plaintiff did not allege a claim for Negligence against Defendant PNC.  Thus, there is no claim to dismiss against Defendant PNC.

### 6.   Ninth Cause of Action for Violation of Business and Professions Code Section 17200 is Sufficient to State a Claim Against Defendant PNC.

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent" business practice.  (California Bus. & Prof. Code § 17200.)  A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer.  (Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996).)  A practice is fraudulent if the members of the public are likely to be deceived by the practice.  (Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).)  The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other law.'" (Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122, (9th Cir. 2009), quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002).)

Contrary to Defendant PNC's contentions, Plaintiff made viable charging allegations that Defendant PNC engaged in unfair and fraudulent business practices.  Plaintiff alleged multiple violations ("hooks") of specific statutory and common law provisions under the federal and state laws, including claims for TILA violations and fraud, among others, against Defendant PNC which are incorporated into Plaintiff's UCL claim.

Defendant PNC attempts to shift the blame for its fraudulent business practices to KONDAUR because KONDAUR issued the Notice of Default.  However, Plaintiff alleged PNC

18

directed and guided UNITED and MOORE to tamper with loan applications and to employ deceptive means so that the loans could be rubber stamped by PNC.  (FAC ¶ 30.)  PNC also colluded with MOORE and UNITED by baiting Plaintiff with promised loan terms and later switching the actual terms at closing.  (FAC ¶ 57-60.)  PNC failed to follow traditional underwriting guidelines, thus no interest in Plaintiff's home was ever legally transferred.  (FAC ¶ 162.)  Furthermore, PNC gave Plaintiff a written agreement allowing Plaintiff to rescind his loan within three days, and later denied Plaintiff's ability to do so.  (FAC ¶ 29.)   Moreover, such egregious conduct would likely deceive members of the public who, like Plaintiff, believe that PNC owes a fiduciary duty to act in Plaintiff's best interest.   (FAC ¶ 53.)

Defendant PNC also argues that Plaintiff's claim fails because Plaintiff did not allege any injury in fact as a result of unfair competition.  To the contrary, as a result of PNC's conduct, Plaintiff was required to pay usurious loan payments (FAC ¶ 69), and suffers from a negative credit rating due to Plaintiff's filing Chapter 7 bankruptcy at PNC's request.  (FAC ¶ 74.) Accordingly, the Court should deny Defendant's Motion to Dismiss Plaintiff's claim for violations of California Business and Professions Code Section 17200.

## III.  <u>CONCLUSION</u>

Based on the foregoing arguments, Plaintiff respectfully requests that Defendant PNC's Motion to Dismiss be denied.  In the alternative, should the Court desire more facts be pled, Plaintiff requests leave to amend.

DATED: September 22, 2010                              Respectfully submitted,

                                                       LOUIS | WHITE & ASSOCIATES

                                                       /s/ Matt Mellen_____

                                                       Matthew Mellen
                                                       Attorneys for Plaintiff
                                                       WILLIAM ALLEN SMITH

# PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )ss.
COUNTY OF SACRAMENTO )

I am a citizen of the United States and a resident of the County of Sacramento.  I am over the age of 18 years and not a party to the within above-entitled action; my business address is 5600 H STREET, SUITE 100, SACRAMENTO, CA 95819.

On this date I served the foregoing document described as follows:

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED BY DEFENDANT PNC, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO NATIONAL CITY BANK, PREVIOUSLY DOING BUSINESS AS "NATIONAL CITY MORTGAGE"**

on the following interested parties in this action:

### SEE ATTACHED SERVICE LIST

The following is the procedure in which service of this document was effected:

❏     Facsimile, Time: _____ P.M.; Date:

❏     Federal Express, Priority Overnight

❏     United Parcel Service, Next Day Air

❏     United States Mail,

✓     By Electronic Mail - I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the above listed CM/ECF registrants.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and that this declaration was executed on September 22, 2010 at Sacramento, California.

_/s/ Rosanna Dolner_

ROSANNA DOLNER

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

## SERVICE LIST

2

Wolfe & Wyman Llp                          Representing Defendant
2175 N. California Blvd., Suite 645
3    Walnut Creek, CA 94596                   National City Mortgage
925-280-0004-207
4    Fax: 925-280-0005
Email: amdostalova@wolfewyman.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT